**SEABOARD WORLD AIRLINES, INC., Plaintiff,**

v.

**AIR TRANSPORT DIVISION, TRANSPORT WORKERS UNION OF AMERICA, AFL/CIO, Transport Workers Union of America, AFL/CIO, Local 504, William Lindner, as Director of the TWU Air Transport Division, Michael Mancini, as President of TWU Local 504, Louis Forte; Andrew Stroligo, Defendants.**

No. 76 C 500.

United States District Court. E. D. New York.

July 26, 1977.

Ernest L. Garb, Jamaica, N. Y., for plaintiff; Lloyd S. Gastwirth, Jamaica N. Y., of counsel.

Wallace & O'Haire, Hicksville, N. Y., for defendants; by Andrew J. Wallace, Hicksville, N. Y.

MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff Seaboard World Airlines, Inc. ("Seaboard"), a Delaware corporation hav-

ing its principal office in Jamaica, New York, is engaged in the international carriage of cargo by air. Defendants Air Transport Division, Transport Workers Union of America, AFL/CIO, and Transport Workers Union of America, AFL/CIO Local 504 (collectively, "TWU") are labor organizations representing airline mechanics, stock clerks, traffic agents and cargo service men employed by plaintiff. Plaintiff brought this action under Section 3, First (q) of the Railway Labor Act, 45 U.S.C. § 153, First (q), to set aside an award of the Seaboard World Airline System Board of Adjustment ("Adjustment Board") or to remand the award to the Adjustment Board for clarification. Defendants filed a counterclaim to affirm and enforce the award. Both sides have now moved for summary judgment.

The contested award resulted from the Adjustment Board's consideration of the following issue:

"When an employee receives an award from the Workmen's Compensation Board for Temporary Total Disability *and* Permanent Partial Disability is the Company entitled to any reimbursement of payments which it made to the employee?"

Resolution of this issue turned on the proper interpretation of Article 19(A) and (B) of the collective bargaining agreement between Seaboard and the TWU, which provides:

"ARTICLE 19—OCCUPATIONAL ILLNESS OR INJURY

"(A) In the event that an employee is disabled by an occupational illness or injury which is compensable under the applicable workmen's compensation laws, the employer shall pay to the disabled employee:

"1. His normal wage (regular pay at straight time rates) for a period not to exceed fourteen (14) consecutive calendar days.

"2. During any period of continued disability beyond fourteen (14) consecutive calendar days, eighty (80%) percent of the disabled employee's wage for an additional period not to exceed forty-five (45) consecutive calendar days.

"(B) All workmen's compensation benefits that are received by the employee for the period of temporary total disability and during which the employer made payments in excess of the workmen's compensation benefits, shall be refunded by the employee to the employer. The refunding of benefits to the employer shall not apply to any workmen's compensation benefits received as an award for permanent injury, and which might exceed his total wages for the period of time lost from employment."

The issue was presented to the Adjustment Board in the context of grievances filed by defendants Louis Forte and Andrew Stroligo, mechanics employed by Seaboard and represented by the TWU. Each grievant received an occupational job injury as to which the Workmen's Compensation Board granted him an award for both temporary total disability and permanent partial disability.

In Stroligo's case, the Compensation Board found that he was totally disabled for 6⅘ weeks. Since at that time compensation for a temporary total disability was $95.00 per week, Stroligo was awarded $646.00. In addition, the Compensation Board found that he had suffered a 20% loss of his left great toe. According to the schedule set forth in New York Workmen's Compensation Law § 15, such a permanent partial disability involving a great toe entitles an employee to 7⅗ weeks of compensation at $80.00 per week. The Compensation Board then subtracted the period of the temporary total disability, 6⅘ weeks, from the 7⅗ weeks, and multiplied the remainder of ⅘ weeks by $80.00 to obtain an award of $64.00 for the permanent partial disability. When this was added to the award of $646.00, the total award came to $710.00.

Forte's award followed a similar pattern. The Compensation Board granted him $266.00 for his temporary total disability, $328.00 for his permanent partial disability, for a total award of $594.00.

Upon learning of the awards, Seaboard, in accordance with its past practice under Article 19(B) of the collective bargaining agreement, gained reimbursement of the amounts listed for temporary total disability and allowed Stroligo and Forte to receive the remaining sums attributed to permanent partial disability. Stroligo and Forte then filed grievances in which each contended that he was entitled to the total award granted him by the Compensation Board. Seaboard denied the grievances, which then were referred to the System Board of Adjustment to hear and decide. When the two Seaboard members and the two TWU members deadlocked over the grievances, an impartial referee, Burton Turkus, was selected to break the deadlock.

Following a hearing, the referee issued an opinion in which he accepted the argument of the TWU. In its brief before the Adjustment Board the TWU had argued:

"When an employee is temporarily totally disabled he is entitled to receive his full wages for 14 days and 80% of his wages for 45 days from Seaboard. If he is not permanently disabled, he must return any workmen's compensation benefits · he receives, since such payments would be in excess of his normal wage. However, if he receives a permanent disability award, he is entitled to those workmen's compensation benefits which are in excess of his normal wage." Brief at 7.

Attached to the referee's opinion was a one-page award by the Adjustment Board, which provided in pertinent part:

"When an employee is temporarily totally disabled by an occupational illness or injury which is compensable under the applicable Workmen's Compensation Laws, he is entitled to receive his normal wage . . . for a period not to exceed fourteen (14) consecutive calendar days and eighty (80%) percent of the said disabled employee's wage for an additional period not to exceed forty-five (45) consecutive calendar days. If he is not permanently disabled, the employee must return or refund to the Company any workmen's compensation benefits he receives since such payments would be in excess of his normal wage. However, if he also receives a permanent partial disability award, the employee is entitled to those workmen's benefits therefor which are in excess of his normal wage."

Seaboard's subsequent request for clarification of this award was denied, and the present action ensued.

The TWU now argues that, pursuant to this award, Stroligo and Forte are entitled to receive the amounts previously reimbursed to Seaboard. Seaboard, on the other hand, offers two alternative arguments: (1) the award does not answer the question presented to the Adjustment Board, namely, whether it was entitled to the reimbursement it had obtained; and (2) if the Adjustment Board answered the question in the negative, the award should be set aside.

The court agrees with Seaboard's first argument. Whereas in his opinion the referee sides with the TWU, the award lends itself most readily to an interpretation in favor of Seaboard. Although the award largely tracks the language set forth above from the TWU's brief, it adds one key word which changes the meaning completely. The award states that "if he also receives a permanent partial disability award, the employee is entitled to those workmen's benefits *therefor* which are in excess of his normal wage" (emphasis added). The addition of the word "therefor" means that the employee is entitled only to those benefits for permanent partial disability. For Stroligo this amounts to $64.00, and for Forte $328.00. Since they have already received those amounts, no further action is required of Seaboard, which is entitled to keep the reimbursements it had received.

The award, therefore, conflicts with the referee's opinion. "Courts will not enforce an award that is incomplete, ambiguous, or contradictory." *Bell Aerospace Co. v. Local 516, UAW,* 500 F.2d 921, 923 (2 Cir. 1974). Although the award presumably was meant to be in favor of the TWU, on its face it supports Seaboard. Under these circum-

stances, the court can take no action on the award but rather must remand it to the Adjustment Board for clarification.

Should the Adjustment Board rule in favor of the TWU and hold that Seaboard is not entitled to the reimbursement it had obtained, it would appear that such an award should be set aside for disregarding the applicable law. See *Local 771, I.A. T.S.E., AFL–CIO v. RKO General, Inc.,* 546 F.2d 1107, 1113 (2 Cir. 1977). As explained above, the Compensation Board awarded Stroligo only $64.00 for his permanent partial disability and Forte only $328.00. The Compensation Board's total awards to Stroligo and Forte cannot be considered as being for permanent partial disability. The Notice of Decision from the Compensation Board clearly labels one part of the total award for temporary total disability and the remainder for permanent partial disability, and the amount of each part is based upon the appropriate rate of compensation. The New York courts have established that there cannot be concurrent total and partial disability. *Wilkosz v. Symington Gould Corp.,* 14 A.D.2d 408, 221 N.Y. S.2d 209 (3rd Dept. 1961); *Kaminski v. Mohawk Carpet Mills, Inc.,* 11 A.D.2d 827, 202 N.Y.S.2d 731 (3rd Dept. 1960). For Stroligo and Forte, therefore, the awards for permanent partial disability represented merely the excess of the scheduled number of weeks allowed for their permanent partial disabilities over the number of weeks they were totally disabled.

For the present, however, the Adjustment Board's award will be remanded to the Adjustment Board for clarification. Accordingly, the motions for summary judgment are denied.

SO ORDERED.