■ In the Matter of the Claim of STEWART SOPER, Respondent, v GOUVERNEUR TALC COMPANY et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent. [663 NYS2d 696] —Yesawich Jr., J. Appeal from a decision of the Workers' Compensation Board, filed January 24, 1996.

On June 8, 1990, claimant filed C-3 claims for workers' compensation benefits with respect to two separate disabilities—occupational lung disease and hearing loss—arising during the same period of employment with the same employer. Claimant stopped working on October 1, 1990 due to lung problems.

On January 8, 1991, a Workers' Compensation Law Judge (hereinafter WCLJ) rendered a decision on the hearing loss claim, finding that occupational disease, notice and causal relationship had been established for binaural hearing loss of 43%, with a date of disablement of September 28, 1990. Claimant received a schedule award of $18,060, to be paid at the rate of $280 per week for 64½ weeks.

Then, on May 23, 1991, after a separate hearing, the WCLJ held that occupational disease, notice and causal relationship had been established for pneumoconiosis, with a date of disablement of October 1, 1990. Having concluded that claimant was temporarily totally disabled, the WCLJ directed that he receive benefits of $340 per week through May 14, 1991. These payments were subsequently continued at the same rate, and in 1992 claimant was found to be permanently totally disabled as a result of this ailment.

In November 1991, the employer's insurance carrier, which

had been making payments on both claims concurrently—a total of $620 per week—from October 1, 1990, requested a hearing on the issue of overpayment. Following a December 1991 hearing, a WCLJ directed that payments continue in the lung case and that the carrier refrain from recouping any over- payment in the hearing loss case. Shortly thereafter, while the carrier's request for review of this decision was pending, pay- ment in its entirety of the hearing loss award was completed.

The Workers' Compensation Board, on December 16, 1992, held, *inter alia*, that the amount paid in the hearing loss case after October 1, 1990 "represents a portion of the schedule award and was not for actual lost time". The Board modified that award to reflect that "the period from October 1, 1990 to December 25, 1991 is held in abeyance", and reopened that case "to consider when the balance of the schedule award is due". The matter was then referred to a WCLJ who, after fur- ther hearings, found that claimant was entitled to $280 per week from September 28, 1990 to October 1, 1990, and that the remainder of the hearing loss award was "to be paid either when claimant goes off total disability or after death". In addi- tion, he determined that the carrier was entitled to a credit for payments made "as a result of the decision in both files" after January 8, 1991 (the date payments had commenced).

Both claimant and the carrier sought Board review of this decision. Claimant contested the finding that the carrier is entitled to take a credit, against its ongoing obligation in the lung case, for overpayment in the hearing loss case, while the carrier urged the Board (1) to reverse so much of the decision as declared that the remainder of the schedule award is pay- able at the cessation of disability or death, and (2) to provide direction as to the method and manner by which it may recoup its "credit" for the earlier overpayment. The Board affirmed the decision without explication, and this appeal by the employer and the carrier ensued.

Because concurrent payment of a schedule award for claimant's hearing loss and an award for his total disability is not legally authorized (*see, Matter of Wilkosz v Symington Gould Corp.*, 14 AD2d 408, 409, *affd* 14 NY2d 739), the WCLJ rightly concluded that the carrier is entitled to a credit for amounts paid on the schedule award for the period after October 1, 1990, the date of claimant's total disablement (*see, Matter of Gallman v Walt's Tree Serv.*, 43 AD2d 419, 421). Inasmuch as the $340 weekly benefit claimant has been awarded, on account of his total disability, is intended to provide recompense for the loss of *all* of his earning capacity,

there is no logical basis for also allowing him a schedule award, designed to compensate for a presumed, partial loss of earning capacity (*see, Dietrick v Kemper Ins. Co.,* 76 NY2d 248, 254; *Matter of Marhoffer v Marhoffer,* 220 NY 543, 547), during the same period (*see, Matter of Wilkosz v Symington Gould Corp., supra,* at 410; *Matter of Freeland v Endicott Forging & Mfg. Co.,* 233 App Div 440, 442).

Moreover, having been declared permanently disabled by lung disease, claimant will presumably receive these $340 payments until his demise (*see, Clark v Hayes,* 207 App Div 560, 563, *affd* 238 NY 553), and will be fully compensated thereby for the loss of any and all amounts he might have earned after October 1, 1990. He is entitled to no more. In these circumstances, we deem it appropriate to reverse the duplicative portion of the schedule award, without prejudice to reconsideration if there should be a change in claimant's disability status (*see, Matter of Kaminski v Mohawk Carpet Mills,* 11 AD2d 827).

Accordingly, the matter must be remitted to the Board so that it may determine the method and manner in which the carrier is to recoup the amount of its overpayment from the benefits currently being paid to claimant (*see,* Workers' Compensation Law § 22; *Matter of Dovi v Grand Union Co.,* 64 AD2d 343, 344).

Cardona, P. J., Mikoll, Mercure and Casey, JJ., concur. Ordered that the decision is modified, without costs, by reversing so much thereof as ruled that the balance of the schedule award is to be held in abeyance until claimant goes off total disability or dies; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.