Mercure, J.E
Appeal from a decision of the Workers’ Compensation Board, filed July 24, 2002, which ruled that claimant’s schedule loss of use award be suspended for a period of time.
In October 1999, claimant, a food services worker, filed two separate claims for workers’ compensation benefits. Occupational disease to claimant’s shoulders was established based on the first injury, which occurred on January 4, 1999. Although an award was directed, claimant was found to have no compensable lost time for the period running from December 13, 1999 to February 14, 2000. The second claim arose from work-related injuries sustained on January 19, 1999 to claimant’s hands and wrists. Claimant established an occupational disease of bilateral carpal tunnel syndrome and a temporary total disability award was directed at the rate of $145.89 per week, covering the December 13, 1999 to February 14, 2000 time period.
Following a subsequent hearing regarding claimant’s January 4, 1999 injury, a Workers’ Compensation Law Judge awarded claimant a 43% schedule loss of use of her right arm and a 30% schedule loss of use of her left arm, entitling claimant to a total of 227.76 weeks of benefits. At the hearing, the State Insurance Fund—the employer’s workers’ compensation carrier—argued that since claimant, in connection with her January 19, 1999 *692 injury, had already received compensation at the maximum rate for total disability for the December 13, 1999 to February 14, 2000 time period, that period should be excluded from the schedule loss of use award. The Workers’ Compensation Law Judge disagreed and, without excepting that time period, directed the State Insurance Fund to continue compensating claimant at a rate of $140.47 per week. On review, the Workers’ Compensation Board reversed, finding that, in order to prevent an overlap in awards, payment of the schedule loss of use award must exclude the December 13, 1999 to February 14, 2000 time period. Claimant appeals.
We reverse. Because a schedule award is simply the method or formula by which the total amount of a compensation award is to be measured, “ ‘[t]he payment of the schedule award is not allocable to any particular period of disability’ ” (Matter of Briggs v Village of Hamilton, 136 AD2d 442, 444 [1988], quoting Matter of Lynch v Board of Educ. of City of N.Y., 1 AD2d 362, 365 [1956], affd 3 NY2d 871 [1957]; see Matter of Fox v Crosbie-Brownlie, Inc., 284 AD2d 42, 44 [2001]). That is, “a schedule award is ‘independent of the time an employee actually loses from work’ ” (Matter of Fox v Crosbie-Brownlie, Inc., supra at 44, quoting Matter of Landgrebe v County of Westchester, 57 NY2d 1, 6 [1982]). Thus, a schedule award may not be viewed as including a specific period of disability (Matter of Fox v Crosbie-Brownlie, Inc., supra at 44).
We conclude that the schedule award granted for claimant’s January 4, 1999 injury is not allocable to any particular period, including the December 13, 1999 to February 14, 2000 period. Thus, the schedule award cannot be deemed to overlap with claimant’s temporary total disability award covering that period.
The cases relied upon by the State Insurance Fund do not compel a contrary result. Those cases establish that the total amount received from schedule and nonschedule awards may not exceed the maximum allowable rate when the nonschedule award is based upon a finding of permanent disability (see Matter of Soper v Gouverneur Talc Co., 243 AD2d 1001, 1002-1003 [1997]; Matter of Salvet v Union Carbide Linde Div., 135 AD2d 965, 966 [1987]; Matter of Wilkosz v Symington Gould Corp., 14 AD2d 408, 409-410 [1961], affd 14 NY2d 739 [1964]). When an award is based on a finding of permanent disability, the benefit is intended to recompense a claimant for the loss of all of his or her earning capacity on a permanent basis—i.e., without respect to any particular time frame (see Matter of Soper v Gouverneur Talc Co., supra at 1002-1003). “Logic dictates that *693 there can be no disability greater than total permanent disability, and to attempt to add something to the compensation fixed by the law for such total permanent disability creates an overlapping of compensation which finds no sanction in the law” (Matter of Wilkosz v Symington Gould Corp., supra at 410). Thus, while a schedule award is not allocable to any particular time frame, such an award may not be added to a nonschedule award for total permanent disability because the nonschedule award represents the maximum compensation to which the claimant is entitled for all time.
Here, in contrast, the nonschedule award is based upon a finding of temporary disability during a limited time frame—i.e., the award is not meant to reimburse claimant for the loss of all future earning capacity, but only that experienced during a defined period of time. Inasmuch as claimant’s schedule award is not allocable to the time period during which she received temporary total disability or based on any actual period during which claimant was prevented from earning full wages due to disability (see Matter of Fox v Crosbie-Brownlie, Inc., supra at 43-44), the schedule and nonschedule awards cannot be said to have overlapped. Accordingly, we conclude that claimant did not receive more than the maximum allowable rate during any given time period.
Spain, Carpinello, Mugglin and Lahtinen, JJ., concur. Ordered that the decision is reversed, without costs, and matter remitted to the Workers’ Compensation Board for recalculation of claimant’s award for the period of December 13, 1999 to February 14, 2000.